FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Aug 29, 2025

SEAN F. MCAVOY, CLERK

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| CHEREE C.,[1] | No.  4:25-cv-5003-EFS |
| Plaintiff, | |
| v. | **ORDER AFFIRMING THE ALJ'S DENIAL OF DISABILITY** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Cheree C. argues that she is unable to work due to her physical and mental impairments and therefore asks the Court to

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." See LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is substituted as the Defendant.

DISPOSITIVE ORDER - 1

reverse the Administrative Law Judge's (ALJ) denial of Title 16 supplemental security income benefits. In response, the Commissioner asks the Court to affirm the ALJ's denial. For the reasons that follow, the ALJ's decision is affirmed.

## I.    Background

In 2020, Plaintiff applied for supplemental security income benefits under Title 16.[3] She later amended her onset date of disability to August 26, 2020.[4] The agency denied her claim for benefits.[5] Thereafter, Plaintiff requested an administrative hearing, which was held in September 2023, at which Plaintiff and a vocational expert testified.[6]

---

[3] AR 561–69. Plaintiff dismissed her claim for disability insurance benefits under Title 2. AR 18–19, 280.

[4] AR 18.

[5] AR 436–63.

[6] AR 271–318.

Plaintiff, who was 43 at the time of the hearing, testified that she has a caregiver.[7] She said the caregiver:

> does everything from helping me dress, with all the circumstances to hygiene, bath taking, transfer sometimes like when I get up, if I'm trying to get up like from the couch or the bed. They're there because sometimes I can't feel my legs. If I put weight on it, it's just not there, so they help with that. Activities of daily living, so meal tasks and they drive me to doctor's appointments, remind me to take my medication, and administer one or two of my medications.[8]

She testified that she lives with her 8-year-old son, who has autism and some physical issues.[9] She reported that she has a vehicle that she drives sometimes although she has difficulty turning the wheel and gripping due to having no sensation in her hands and fingers and swelling and tender points in the back of her neck and shoulders.[10] She

---

[7] AR 274, 282.

[8] AR 299.

[9] AR 282.

[10] AR 282–83.

said that other times the her caregiver will drive her, and prior thereto she would get a ride from a medical-transportation provider.[11]

She stated that her fibromyalgia causes pain in her upper chest area, hips, lower back, neck, and head, and that she has shooting pain down her legs with some tingling.[12] She stated that her hands will be swollen for long periods of time.[13] She has difficulty doing certain repetitive movements, cannot sit in a chair or stand for longer than 20–30 minutes, and can only walk for about 5–10 minutes because of her pain.[14] She said that she uses railings to go up and down stairs and that she needs to hold onto something if she squats or kneels.[15] She shared that she has problems concentrating or remembering things, including doctor's appointments.[16] She stated that she lies down about

---

[11] AR 285.

[12] AR 294.

[13] AR 294.

[14] AR 295–97.

[15] AR 297–98.

[16] AR 295–96.

2 hours a day, largely to put her feet up.[17] She said that she has about 4–6 days a month when she is unable to do anything at all due to her constant pain.[18]

She also reported about 3 days a week she has extreme constipation.[19] The other 4 days of the week she has incontinence with painful cramping.[20] She shared that she gets 4 migraines a month, with aura or other symptoms for several days; her eyes will be swollen and sensitive to light.[21] Her anxiety and depression also cause her heart to race, to panic, and to isolate.[22]

---

[17] AR 300.

[18] AR 300–01.

[19] AR 290.

[20] AR 291.

[21] AR 293.

[22] AR 301.

After the hearing, the ALJ issued a decision denying benefits.[23] The ALJ found Plaintiff's alleged symptoms were "not entirely consistent with the medical evidence and other evidence."[24] As to the medical opinions, the ALJ found:

- the psychological consultative examination opinion of David Oni, PMHNP, and the administrative medical findings of Charles Murphy, MD; Myron Watkins, MD; Thomas VanHoose, PhD; and Carol Mohney, PhD, partially persuasive.

---

[23] AR 15–38. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled. The ALJ found evidence of "changed circumstances" since the final decision on Plaintiff's prior disability claim was issued. AR 19. Therefore, because the non-disability presumption was sufficiently rebutted, the ALJ did not adopt the prior ALJ's findings. AR 19.

[24] AR 27. As recommended by the Ninth Circuit in *Smartt v. Kijakazi*, the ALJ should replace the phrase "not entirely consistent" with "inconsistent." 53 F.4th 489, 499, n.2 (9th Cir. 2022).

- the treating opinion of James Byrd, MD, not persuasive.[25]

As to the sequential disability analysis, the ALJ found:

- Step one: Plaintiff had not engaged in substantial gainful activity since August 26, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: fibromyalgia, degenerative disc disease, asthma, obesity, dysthymic/depressive disorder, and anxiety disorder.

- Step three: Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.

- RFC: Plaintiff had the RFC to perform light work with the following additional limitations:

> lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently; can stand and walk for six hours of an eight-hour workday with standard breaks, for 30 minutes at a time, with the option to sit at the work station and continue working for 10 minutes, after 30 minutes or standing or walking; can sit for six hours of an eight-hour workday with standard breaks; can occasionally stoop, climb ramps and stairs, kneel,

---

[25] AR 29–31.

DISPOSITIVE ORDER - 7

crawl and crouch, and can never climb ladders, ropes, and scaffolds. She can occasionally balance, as that term is used in the Department of Labor's Selected Characteristics of Occupations. She must never have concentrated exposure to extreme heat, extreme cold, humidity, pulmonary irritants, and vibrations, and must never be exposed to unprotected heights and dangerous unprotected machinery. She can understand, remember, and carry out simple tasks, but not at an assembly line rate; can make simple work-related decisions; can have occasional work-related interactions with co-workers, supervisors, and the general public; and can have occasional changes in the work setting.

- Step four: Plaintiff was unable to perform any past relevant work.

- Step five: considering Plaintiff's RFC, age, education, and work history, Plaintiff could perform work that existed in significant numbers in the national economy, such as office helper, copy machine operator, and non-postal mail clerk.[26]

Plaintiff timely requested review of the ALJ's decision by the Appeals Council and now this Court.[27]

---

[26] AR 17–33.

[27] AR 1–7.

DISPOSITIVE ORDER - 8

## II.    Standard of Review

The ALJ's decision is reversed "only if it is not supported by substantial evidence or is based on legal error" and such error impacted the nondisability determination.[28] Substantial evidence is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[29] The court looks to the entire record to determine if substantial evidence supports the ALJ's findings.[30]

---

[28] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. § 405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012), *superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that the court may not reverse an ALJ decision due to a harmless error—one that "is inconsequential to the ultimate nondisability determination").

[29] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)).

[30] *Kaufmann v. Kijakazi*, 32 F4th 843, 851 (9th Cir. 2022). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (requiring

### III.   Analysis

Plaintiff argues the ALJ committed several errors: erred at step two by determining that some of the impairments were not severe, by rejecting Dr. Byrd's medical opinion, by discounting Plaintiff's subjective testimony, and at step five. The Commissioner argues that the ALJ's findings are supported by substantial evidence and that, if there was any error, it was harmless. As is explained below, Plaintiff fails to establish consequential error.

### A.   Step Two: Plaintiff fails to establish consequential error.

Plaintiff argues the ALJ erred at step two by failing to find migraines and irritable bowel syndrome (IBS) to be severe impairments. However, as is explained below, the ALJ's step-two findings as to these impairments are supported by substantial evidence.

_____

the court to consider the entire record, not simply the evidence cited by the ALJ or the parties) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

1       1.   <u>Standard</u>

2       At step two, the ALJ determines whether the claimant suffers

3   from a severe impairment, i.e., one that significantly limits her

4   physical or mental ability to do basic work activities.[31] This involves a

5   two-step process: 1) determining whether the claimant has a medically

6   determinable impairment, and 2) if so, determining whether the

7   impairment is severe.[32] To be severe, the medical evidence must

8   establish that the impairment would have more than a minimal effect

9   on the claimant's ability to work.[33]

10       Neither a claimant's statement of symptoms, nor a diagnosis, nor

11   a medical opinion sufficiently establishes the existence of an

12   impairment.[34] Rather, "a physical or mental impairment must be

13   established by objective medical evidence from an acceptable medical

---

15   [31] 20 C.F.R. § 416.920(c).

16   [32] *Id.* § 416.920(a)(4)(ii).

17   [33] *Id.*; *see also* Soc. Sec. Rlg. (SSR) 85-28 (Titles II and XVI: Medical

18   Impairments That Are Not Severe).

19   [34] 20 C.F.R. § 416.921.

1   source."[35] If the objective medical signs demonstrate the claimant has a

2   medically determinable impairment,[36] the ALJ must then determine

3   whether that impairment is severe.[37]

4        The severity determination is discussed in terms of what is *not*

5   severe.[38] A medically determinable impairment is not severe if the

6   "medical evidence establishes only a slight abnormality or a

7   combination of slight abnormalities which would have no more than a

8   minimal effect on an individual's ability to work."[39] Because step two is

9

10  _____

11  [35] *Id. See also* SSR 85-28 at *4 ("At the second step of sequential

12  evaluation . . . medical evidence alone is evaluated in order to assess

13  the effects of the impairment(s) on ability to do basic work activities.").

14  [36] "Signs means one or more anatomical, physiological, or psychological

15  abnormalities that can be observed, apart from [a claimant's]

16  statements (symptoms)." *Id.* § 416.902(l).

17  [37] *See* SSR 85-28 at *3.

18  [38] *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996).

19  [39] *Id.*; *see* SSR 85-28 at *3.

DISPOSITIVE ORDER - 12

simply to screen out weak claims,[40] "[g]reat care should be exercised in applying the not severe impairment concept."[41] Step two "is not meant to identify the impairments that should be taken into account when determining the RFC" as step two is meant *only* to screen out weak claims, whereas the crafted RFC must take into account all impairments, both severe and non-severe.[42]

2.    The ALJ's findings

The ALJ found Plaintiff had the severe impairments of fibromyalgia, degenerative disc disease, asthma, obesity, dysthymic/depressive disorder, and anxiety disorder.[43] Yet, the ALJ found that Plaintiff's IBS and migraines were non-severe impairments.[44]

---

[40] *Smolen*, 80 F.3d at 1290.

[41] SSR 85-28 at *4.

[42] *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017).

[43] AR 21.

[44] AR 22–23.

As to Plaintiff's irritable bowel syndrome, the ALJ found this impairment to be non-severe because Plaintiff reported that her constipation was manageable, and there was no indication that Plaintiff had to spend a substantial amount of time in the restroom or needed to be near a restroom.[45]

The ALJ found Plaintiff's migraines to be non-severe because they have been treated generally conservatively with medication and she reported improvement with medication and new eye glasses.[46] Even though the ALJ found Plaintiff's migraines to be non-severe, the ALJ stated that he "accounted for" them in the RFC by including environmental limitations.[47]

3.    IBS

Plaintiff argues that the objective findings of moderate diffuse abdomen tenderness in the treatment records, along with her fecal incontinence and urinary incontinence, has had more than a minimal

---

[45] AR 22–23.

[46] AR 22.

[47] AR 22.

effect on her ability to perform work activities. However, as the Commissioner argues, the longitudinal medical record supports the ALJ's finding that Plaintiff's IBS was not a severe impairment. Plaintiff was observed on a few occasions with moderate diffuse tenderness in the abdomen, however, there was no indication by the providers that the observed tenderness did or would limit her movement; for instance, there were no observed other symptoms, such as impaired gait or posture, observed pain, or impacted mental state.[48] Also, as the ALJ noted, the treatment record does not reflect the need for ready access to a workplace bathroom or additional bathroom-break time. There was no error by the ALJ in finding IBS to be a non-severe impairment.

### 4. Migraines

Plaintiff argues the ALJ's finding that her migraines are non-severe is not supported by substantial evidence because it is not

_____

[48] *See* AR 792 (Dec. 7, 2020); AR 1173 (June 9, 2021); AR 1583 (Oct. 13, 2021). *See also* AR 732, 734, 735, 736, 738, 1140, 1588 (Dr. Byrd's treatment records with "benign" abdomen and gait findings).

reasonable to penalize Plaintiff for receiving conservative treatment for her migraines when no non-medication treatment alternative exists, and that the longitudinal treatment record reveals that any reported improvement was short lived. In response, the Commissioner highlights that medication adequately controlled Plaintiff's headache symptoms. The Commissioner also highlights that the RFC restricted any "concentrated exposure to extreme heat, extreme cold, humidity, pulmonary irritants, and vibrations" and thus any error in finding Plaintiff's migraines to be non-severe was harmless because the ALJ considered them when crafting the RFC.[49]

The two prior administrative medical findings by the State agency consultants did not find migraines to be a severe impairment.[50] The medical record reflects that Plaintiff routinely sought treatment for migraines, and that her insurance company required her to try out various medications before approving Aimovig in March 2022, which

---

[49] ECF No. 10 (quoting AR 26).

[50] AR 354–99.

1   Plaintiff reported was the most effective at treating her migraines.[51]

2   She reported to treating providers that she "struggle[s] with migraines

3   2–3 times per week that last 24 hours to 72 hours. She reports aura,

4   nausea, sensitivity to light, severe head pain, vomiting with each

5   migraine which has been incapacitating. Aimovig was effective and

6   prevented these attacks by 75%."[52] In June 2023, Plaintiff told a

7   treating provider that because of her new glasses her headaches had

8   almost gone away completely.[53] At her monthly medication-

9   management appointments, Plaintiff was never noted to be in acute

10  distress; no nausea, dizziness, or balance problems were noted; and she

11  had normal breathing, good eye contact, and clear speech, with no

12  tenderness of the head or neck noted. Moreover, such symptoms were

13  rarely noted at any of her other physical-health appointments.

14  Although such symptoms need not necessarily be present for migraines

15  to be a severe impairment, it was reasonable for the ALJ on this record

16  _____

17  [51] AR 46, 71–73.

18  [52] AR 46.

19  [53] AR 1360.

with largely benign physical findings to conclude that Plaintiff's migraines would have no more than a minimal impact on her ability to work.[54] Substantial evidence supports the ALJ's clear explanation as to why Plaintiff's migraines were deemed non-severe. Moreover, any error is inconsequential, as the RFC included several environmental limitations to reduce the likelihood of migraines.

**B.    Medical Opinions: Plaintiff fails to establish consequential error.**

Plaintiff argues the ALJ erred by improperly rejecting the opinions of her treating rheumatologist, Dr. Byrd. As discussed below, the Court agrees with the Commissioner that the ALJ reasonably found Dr. Byrd's opinion to be unsupported.

1.    <u>Standard</u>

The ALJ must consider and articulate how persuasive he found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with

---

[54] *See, e.g.*, AR 46, 50, 69, 123, 1269, 1273.

and supported by the record.[55] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[56] Supportability and consistency are the most important factors.[57] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[58]

### 2.  Dr. Byrd

Dr. Byrd treated Plaintiff for fibromyalgia for several years. His treatment records routinely state either, "Musculoskeletal exam: No overt evidence of active synovitis. > 11 tender points,"[59] or "[h]er

---

[55] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[56] 20 C.F.R. § 416.920c(c)(1)–(5).

[57] *Id.* § 416.920c(b)(2).

[58] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

[59] AR 732, 734, 735, 737, 738; *see also* AR 1140, 1602.

presentation remains consistent with fibromyalgia."[60] Before the

amended onset date, he wrote a letter in December 2019, which states:

> [Cheree] is a patient under my care being treated for severe Fibromyalgia.
>
> Fibromyalgia is a chronic widespread pain and fatigue disorder. The cause is unknown. Symptoms can include widespread musculoskeletal pain, fatigue, cognitive disturbance (mental confusion, memory loss and impaired ability to concentrate), headache, depression, anxiety, various neurologic symptoms and regional pain symptoms. Symptoms vary; they wax and wane and can be very unpredictable. It's impossible to determine how frequent flares will occur and how long they will last. It is not uncommon for external stressors or excessive physical activity to exacerbate symptoms, which can oftentimes be debilitating.
>
> Therapy can be challenging and requires an individualized approach and multi-disciplinary interventions. The aim is to reduce the major symptoms of the disorder, and includes patient education, stress reduction and avoidance, exercise programs and medications.
>
> Fibromyalgia results in physical limitations due to the pain and fatigue, which can affect a person's ability to work efficiently and reliably. Even with medical management, symptoms are generally always present to a certain degree, which can impact work efficacy.[61]

---

[60] AR 730, 731.

[61] AR 724.

About 4 years later, in August 2023, Dr. Byrd issued a medical opinion stating that Plaintiff's fibromyalgia, widespread musculoskeletal pain, fatigue, headaches, and insomnia, along with her greater than 11 tender points, would require her to lie down 1–2 hours a day due to pain, miss more than 4 or more days of work per month, and be off task 26–50% of the work day.[62] He also opined that work and stress would exacerbate her presentation and that she was at maximum medical benefit and was likely to remain the same.[63]

The ALJ found Dr. Byrd's opinion was not persuasive because it was not well supported:

> To begin, the medical signs listed supporting his opinion are quite vague. He notes that the claimant has more than 11 tender points but does not list how many tender points she has, despite being asked on the form, or indicate where the tender points are located. He also does not explain why the claimant would be so off-task during the workday or miss so many days per month despite being asked to explain why on the form. His treatment records also offer little support as they do not contain much in the way of physical examination findings. His records state that the claimant has severe fibromyalgia symptoms, is about the same, and

---

[62] AR 1585–86.

[63] *Id.*

1

2      has failed most standard therapies (Exhibits C3F, p. 4; C7F,
       p. 4-5; C20F, p. 2).[64]

3   The ALJ also found Dr. Byrd's opinion not persuasive because it was

4   inconsistent with the other evidence in the record, "which has indicated

5   that the claimant has consistently reported that her pain medications

6   allow her to complete activities of daily living and perform normal

7   activities (Exhibits C11F, p. 23, 27, 31, 35)."[65]

8          Plaintiff argues the ALJ's supportability and consistency findings

9   are unsupported by substantial evidence. Although Plaintiff concedes

10  Dr. Byrd did not write detailed explanations for some of his assessed

11  limitations, Plaintiff highlights that Dr. Byrd's opinions are supported

12  by his earlier written letter. The Court disagrees.

13         Dr. Byrd's letter did not discuss Plaintiff's fibromyalgia

14  symptoms individually to Plaintiff, instead, the letter offered general

15  statements about fibromyalgia symptoms, stating that it "can impact"

16

17  _____

18  [64] AR 30–31.

19  [65] AR 31.

DISPOSITIVE ORDER - 22

one's ability to work.[66] Likewise, as the ALJ highlighted, Dr. Byrd's treatment records, even the one issued the same month as his opinion, do not contain objective findings supporting extreme work limitations. Not once did Dr. Byrd identify at which designated tender point Plaintiff experienced tenderness. Moreover, Dr. Byrd never observed active synovitis, fatigue, or cognitive issues. Although these symptoms need not necessarily be observed by the treating provider, the lack of any noted observed symptoms by Dr. Byrd, other than his vague reference to more than 11 tender points, supports the ALJ's finding that Dr. Byrd's extreme limitations were unsupported.

As to consistency, Plaintiff argues the ALJ's finding that Dr. Byrd's opinion was inconsistent with the records in which Plaintiff reports that her pain medications allow her to complete daily and normal activities is a conclusory finding. As highlighted by the ALJ and the Commissioner, Plaintiff often reported to treating providers that, notwithstanding her reported pain and medication, she was

---

[66] AR 724.

completing her normal and daily activities.[67] Yet, Plaintiff also told the ALJ and treating providers that she had a caregiver paid for by the State, who helped her about ten hours a week with household chores, shopping, and hygiene.[68] However, there was no medical or State agency documentation supporting Plaintiff's statements that the State paid for a caregiver for her. Given this lack of documentation, or any discussion of a caretaker by counsel in Plaintiff's opening brief, it is unclear if the caregiver was provided by the State for Plaintiff or for her child, who has autism and reportedly receives supplemental security income.[69] Moreover, if the caregiver was for Plaintiff, it is unclear if the caregiver was solely to help her recover from breast surgery.[70]

---

[67] *See, e.g.*, AR 1286, 1290, 1294, 1298, 1316. *See also* AR 62, 66, 69, 73, 83 (reporting that pain medication provides adequate relief).

[68] AR 996.

[69] AR 282; *see* AR 996 (referring to "123 hours").

[70] AR 996 ("She has caregiver for shopping, housekeeping, bathing, dressing after surgery in 5/20 [for left breast mastectomy]."

Based on Plaintiff's inconsistent reports about her daily and normal activities, along with the unclear record about the reported caregiver, the Court finds this record is unclear as to what were Plaintiff's normal and daily independent activities. Nonetheless, any error as to the ALJ's finding that Dr. Byrd's opinion was inconsistent with the record, is inconsequential because the ALJ's finding that Dr. Byrd's opinion was unsupported is adequate by itself to support the overall unpersuasive finding.[71]

## C.    Symptom Reports: Plaintiff fails to establish consequential error.

The ALJ found Plaintiff's statements about the intensity, persistence, and limiting effect of her symptoms were not entirely consistent with the medical evidence and other evidence in the record.[72] Plaintiff argues this finding was not supported by clear and

_____

[71] *See Woods*, 32 F.4th at 792–93 (affirming the ALJ's unpersuasive finding because the opinion was inconsistent with the overall treatment notes and mental status exams).

[72] AR 27.

convincing reasons; in response, the Commissioner responds that the finding was supported by substantial evidence.

1.  Standard

The ALJ must identify what symptom claims are being discounted and clearly and convincingly explain the rationale for discounting the symptoms with supporting citation to evidence.[73] This requires the ALJ to "show his work" and provide a "rationale . . . clear enough that it has the power to convince" the reviewing court.[74] Factors the ALJ may consider when evaluating the intensity, persistence, and limiting effects of a claimant's symptoms include: 1) objective medical evidence, 2) daily activities; 3) the location, duration, frequency, and intensity of pain or other symptoms; 4) factors that precipitate and aggravate the symptoms; 5) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; 6) treatment, other than medication, the claimant receives or has received for relief of pain or

---

[73] *Smartt*, 53 F.4th at 499.

[74] *Id.* at 499 (alteration added).

1    other symptoms; and 7) any non-treatment measures the claimant uses

2    or has used to relieve pain or other symptoms.[75]

3        2.    Analysis of the ALJ's articulated reasons

4        In support of the ALJ's decision to discount Plaintiff's subjective

5    allegations, the ALJ separately considered each of Plaintiff's severe

6    impairments and discussed medical records related thereto. As to

7    Plaintiff's physical impairments, the ALJ highlighted:

8    • "the rheumatology treatment notes in the record contain very

9        little in the way of physical examination findings."

10   • "her [physical] symptoms have stayed generally stable

11       throughout the time period at issue."

12   • the pain-management notes "contain little in the way of

13       specific physical findings."

14   • other treatment notes indicate normal gait and movement.

15   • she continued to report that her opioid medications were

16       effective and improving her quality of life.

17   _____

18   [75] 20 C.F.R. § 416.929(c)(2), (3). *See also* 3 Soc. Sec. Law & Prac. §

19   36:26, Consideration of objective medical evidence (2019).

- she continued to report she could complete activities of daily living and normal activities, and she had recently reported that she was planning to implement more physical activities as was recommended to treat her fibromyalgia.

- she provided inconsistent statements about how limited she was by her physical impairments.[76]

As was mentioned above, the record is unclear as to the physical demands of Plaintiff's daily and normal activities, and thus, Plaintiff's alleged limitations to activities are not clear enough that they have the power to convince the Court that they are inconsistent with her reported symptoms. Nonetheless, the ALJ clearly explained how he considered other 20 C.F.R. § 416.929(c)(3) factors, as well as considered that Plaintiff gave inconsistent statements not only as to her activity level but also as to the extent of her symptoms. For instance, the ALJ evaluated the longitudinal treatment record, which contained very few abnormal physical examination findings, such as observed pain or

---

[76] AR 27–30.

movement limitations.[77] The ALJ considered that Plaintiff took opioid medication to treat her fibromyalgia, which she consistently reported to her treating providers managed her symptoms.[78] The ALJ examined the neurological test in May 2021, which revealed unremarkable EMG and nerve conduction studies, no vision issues, no atrophy, motor strength of 4+/5 throughout, appropriate muscular tone and bulk, intact sensations, unremarkable gait, negative Phalen's test, and not

---

[77] *See, e.g.*, AR 238–40 (Sept. 2020: observed supple neck with full range of motion, normal gait and movement, and intact eye movement and reaction); AR 253–54 (Dec. 2020: same); AR 260–62 (Feb. 2021: same); AR 1125 (March 2021: fell the day before and observed with right wrist sprain, right ankle sprain and chest wall contusion, but otherwise moving all extremities and no tenderness in the neck, back, or abdomen); AR 1156–62 (June 2021: well appearing, supple neck, no tenderness in abdomen, no swelling or edema, and normal gait and station).

[78] *See, e.g.*, AR 58, 62, 66, 69, 73, 83, 87, 91, 94 ("The current pain regimen is providing adequate relief. . . .").

present Tinel's sign.[79] In addition, the ALJ considered that Plaintiff's treatment providers repeatedly recommended that she be more physically active to reduce her fibromyalgia pain.[80] The ALJ's analysis, citations to the record, and the overall record, support the ALJ's decision to discount the intensity, persistence, and limiting effects of Plaintiff's reported physical symptoms.[81]

As to Plaintiff's dysthymic/depressive disorder and anxiety, the ALJ highlighted the conflict between the observations that Plaintiff had abnormal attention and concentration and mild-to-moderate depressive and anxiety symptoms during some appointments against

––––––––––––––––––––

[79] AR 28 (citing AR 1210–11).

[80] *See, e.g.*, AR 1478 ("she was reminded to be more physically active" to assist with fibromyalgia pain); AR 1290 ("A home exercise program was reviewed with the patient today."). *See also* AR 724 (Dr. Byrd's letter recommending exercise programs to reduce fibromyalgia symptoms).

[81] *See Smartt*, 53 F.4th at 498 ("When objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weight it as undercutting such testimony.").

treatment notes that she reported improvement in her mental-health symptoms during several other appointments.[82] The ALJ discussed that providers adjusted Plaintiff's medications as needed to reduce her symptoms.[83] The ALJ also highlighted Plaintiff's psychological consultation examination with Nurse Oni in March 2022, during which Plaintiff was observed as alert and orientated; appropriately dressed and well-groomed with good eye contact and normal speech; with a mood congruent with the stated affect of normal; with normal, logical, linear, goal-orientated, and hopeful thought processes and content; with no difficulty with attention or concentration; and with normal insight.[84] Plaintiff did not have any difficulties with her intellectual functioning during the examination, and Nurse Oni did not recommend any workplace limitations.[85] Later in the opinion, the ALJ also highlighted that Kristine McMurray, ARNP, who oversaw Plaintiff's

---

[82] AR 28–29.

[83] AR 28–29.

[84] AR 29 (relying on AR 1312–19).

[85] AR 1312–19.

medication management and observed Plaintiff with a sad or anxious mood or with impaired concentration and attention at times, wrote that she was "unable to determine" whether Plaintiff's mental impairments interfered with her ability to perform daily activities, function socially, concentrate and complete tasks, and adapt to work or work-like situations.[86] Accordingly, ARNP McMurray's observation of the abnormal mental-health symptoms did not serve as a basis for workplace limitations in her opinion.

Plaintiff argues the ALJ relied too heavily on the normal mental-health findings in the record without fairly considering her impaired mental health. The Court disagrees. The ALJ reasonably weighed the conflicting evidence. Although medication-management records indicate that providers, such as ARNP McMurray, observed mental-health symptoms during the appointment, such as a sad and anxious mood and/or affect and impaired concentration and attention at times, other medical records, including PMHNP Oni's psychological consultation examination report, indicate that Plaintiff was observed

_____

[86] AR 31 (citing AR 1304–08).

with normal mood and affect, thought content, attention, concentration, and insight.[87] Substantial evidence supports the ALJ's finding that Plaintiff's subjective allegations of her symptoms is inconsistent with the record.

**D.     Step Five: Plaintiff fails to establish error.**

Plaintiff argues the ALJ failed to properly include all her limitations into the RFC and the hypothetical presented to the vocational expert. However, this argument depends on her contention that the ALJ erred at step two and when evaluating Dr. Byrd's medical opinion and Plaintiff's symptom testimony. Because the ALJ did not

_____

[87] *Compare, e.g.,* AR 990, 1000, 1010, 1229, 1235, 1239, 1244, 1249 (noting observed abnormal mental health findings, including at times oppositional behavior; soft, slow, monotone speech; sad, anxious mood; anxious, sad, and constricted affect; impaired insight and judgment; perseveration and circumstantial thought processes), *with, e.g.*, AR 82, 90, 93, 99, 1273, 1281, 1285, 1312–19, 1407, 1453–62, 1575, 1583 (observed normal mental health or no abnormal observed findings noted).

consequentially error in these regards, this final argument necessarily fails.

## IV.   Conclusion

Plaintiff fails to establish that the ALJ consequentially erred. The ALJ's nondisability findings are supported by explanation and substantial evidence.

Accordingly, **IT IS HEREBY ORDERED**:

1.      The ALJ's nondisability decision is **AFFIRMED**.

2.      The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 9 and 10**, enter **JUDGMENT** in favor of the **Commissioner**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 29th day of August 2025.

_____
EDWARD F. SHEA
Senior United States District Judge